**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X

| | | |
|---|---|---|
| **Dr.  EUBULUS J. KERR III,** | ) | |
| | ) | **Index No.     14-cv-9168(KBF)** |
| Plaintiff, | ) | |
| | ) | |
| -against- | ) | |
| | ) | |
| **JOHN THOMAS FINANCIAL; ANASATASIOS** | ) | |
| **BELESIS, and JOSEPH CASTELLANO,** | ) | |
| | ) | |
| Defendants. | ) | |

-------------------------------------------------------------X


## DEFENDANTS' MEMEORANDUM
## OF LAW TO VACATE ARBITRATION AWARD

Anthony C. Varbero, Esq.
Joseph Mure Jr., & Associates
26 Court Street, Suite 2601
Brooklyn, New York 11242
Telephone: (718) 852-9100
Facsimile:  (718) 797-5554
*Attorneys for Respondents*
*Anastasios Belesis and*
*Joseph Castellano*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES....................................................................................... iii

COUNTER-STATEMENT OF FACTS......................................................................4

ARGUMENT...........................................................................................................5

ARGUMENT

**A.    THE ARBITRATION AWARD MUST BE VACATED ON THE GROUND OF MISCONDUCT BY THE ARBITRATORS**

    **1.    Belesis and Castellano are not liable under the theory of Control Person(s)**

    **2.    Respondeat Superior is Not Applicable because Roth and Viglione were Independent Contractors.**

    **3.    There is no private right of Action for Failure to Supervise.**

**B.    CONTROL PERSON LIABILITY DOES NOT EXIST BECAUSE ANASTASIOS AND CASTELLANO CONDUCT RAISE TO THE LEVEL NECESSARY TO CREATE PERSONAL LIABILITY**

**C.    THE ARBITRATION AWARD SHOULD BE VACATED BECAUSE THERE IS A MANIFEST DISREGARD OF THE LAW**

    **1.    THE ARBITRATORS FAILED TO ESTABLISH THAT BELESIS'S CONDUCT WAS REPRESENSIBLE IN ORDER TO AWARD PUNITIVE DAMAGES UNDER THE U.S. SUPREME COURT'S TEST IN *STATE FARM MUT. AUTO. INS. CO. v. CAMPBELL***

**D.    APPLYING NEW YORK LAW OR ALABAMA LAW, THE APPROPRIATE STANDARD FOR PUNITIVE DAMAGES IS "CLEAR AND CONVINCING EVIDENCE."**

**E.    THE PUNITIVE DAMAGES SANTCION BY THE ARBITRATORS MUST BE DISMISSED ACCORDING TO ALABAMA CODE 1975 § 6-11-20, WHICH REQUIRED DELIBERATE ENGAGEMETN OF OPPRESSION, WANTONNESS, OR MALICE**

**F.    THE PUNITIVE DAMAGES SANTCION BY THE ARBITRATORS MUST BE DISMISSED ACCORDING TO NEW YORK LAW**

**G.    THIS CASE SHOULD BE DIMISSED AGAINST  BELESIS AND**

**CASTELLANO IN THEIR INDIVIDUAL CAPACITY BECAUSE THE CLAIMS ARE REALLY A BREACH OF CONTRACT AGAINST JTF**

**H.     ARBITRATORS DISPLAY BIAS AGAINST BELESIS AND CASTELLANO**

   **1.   THE AMENDED COMPLAINT ADDS NOTHING MORE THAN IRRELEVANT AND PREJUDICIAL HEARSAY FROM AN OUT OF STATE SOURCE**

   **2.   THE HEARING**

CONCLUSION .................................................................................................................................

*LLT Int'l Inc. v. MCI Telecommunications Corp.*, 18 F. Supp. 2d 349, 352 (S.D.N.Y. 1998)......11

*STMicroelectronics, N.V. v. Credit Suisse Sec. (USA) LLC*, 648 F.3d 68, 78 (2d Cir. 2011.) .....11

*Caiola v. Citibank, N.A., New York*, 295 F.3d 312, 324 (2d Cir. 2002).......................................11

*Saxe v. E.F. Hutton & Co., Inc.*, 789 F.2d 105, 112 (2d Cir.1986) ...............................................11

*S.E.C. v. Obus*, 693 F.3d 276, 286 (2d Cir. 2012 ......................................................................12

*Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 & n. 12, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976).12

*ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007)....................12

*Lanza v. Drexel & Co.*, 479 F.2d 1277, 1299 (2d Cir. 1973);....................................................12

Gordon v. Burr, 506 F.2d 1080,1085-1086 (2d Cir. 1974) ........................................................12

*Bouguslavsky v. Kaplan*, 159 F.3d 715, 720 (2d Cir. 1998). ....................................................13

*Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmastsu CPA, Ltd.*, .........................13

No. 13 CIV. 1094 ER, 2014 WL 3605540 (S.D.N.Y. July 21, 2014)..........................................13

*Adams v. New York City Transit Authority,* 211 A.D.2d 285, 626 N.Y.S.2d 455 (1st Dept. 1995), *aff'd,* 88 N.Y.2d 116, 643 N.Y.S.2d 511 (1996).......................................................................14

*Rausman v. Baugh,* 248 A.D.2d 8, 10-11, 682 N.Y.S.2d 42, 43-44 (2d Dept. 1998)............14

*Patton v. Dumpson,* 498 F. Supp. 933, 943 (S.D.N.Y. 1980)....................................................14

*Central Bank of Denver, N A. v. First Interstate Bank of Denver, N A.,* 511 U.S. 164, 184 (1994)................................................................................................................................15

*Touche Ross & Co. v. Redington,* 442 U.S. 560 (1979). ..............................................................15

*Global Crossing,* 2005 WL 1875445, at *3. ..............................................................................16

*Gartner v. Dnyder*, 607 F.2d 582, 586 (2d Cir. 1979); *Bridgestone/Firestone v. Recovery Credit Servs.*, 98 F.3d 13, 17 (2d Cir. 1996)...................................................................................16

*Portchester Electric v. Atlas*, 40 NY2d 652, 656 (1976);..........................................................16

*Carte Blanche Pte., Ltd. v. Diners Club Int'l, Inc.*, 2 F3d 24, 26 (2d Cir. 1993). .....................16

*Strojmaterialintorg v. Russian AM. Commercial Corp.*, 815 F. Supp. 103, 105 (E.D.N.Y 1993).16

*Rodriguez de Quijas v. Shearson/Am. Express, Inc.,* 490 U.S. 477 (1989) ...............................16

*Folkways Music Publishers, Inc. v. Weiss*, 989 F.2d 108, 111 (2d Cir.1993).............................17

*State Farm Auto Ins. Co. v. Campbell*, 538 U.S. 408 (2003). ................................................17,18

*Prozeralik v. Capital Cities Communs.,* 626 N.E.2d 34, 41-42 (N.Y. 1993); ...........................18

*Deshmukh v. Cook,* 630 F. Supp. 956, 961 (S.D.N.Y. 1986) ........................................18

*Zurich Ins. Co. v. Shearson Lehman Hutton, Inc.,* 642 N.E.2d 1065, 1068 (N.Y. 1994) .............19

*See Cleghorn v. New York C. & H. R. R. Co.,* 56 N.Y. 44, 48 (N.Y. 1874)................................19

*See Munoz v. Puretz,* 753 N.Y.S.2d 463, 466 (N.Y. App. Div. 2003) ..................................19

*Orange & Rockland Utils., Inc. v. Muggs Pub, Inc.,* 739 N.Y.S.2d 610, 611 (N.Y. App. Div. 2002)

*Sladick v. Hudson General Corp.,* 641 N.Y.S.2d 270, 271 (N.Y. App. Div. 1996).....................19

*Camillo,* 587 N.Y.S.2d at 309 ...................................................................................19

*Lamborn v. New York Cotton Exch.,* 203 A.D. 565, 570 (N.Y. App. Div. 1922) ... *Ryan v. Brophy, Gestal, Knight & Co., L.P.,* No. 12222/91, 1996 N.Y. Misc. LEXIS 583, at *5-6 (N.Y. Misc. Sept. 30, 1996)......................................................................................................19

*Pacific Mut. Life Ins. Co.,* 499 U.S. at 23 n. 11................................................................20

*Honda Motor Co. v. Oberg,* 512 U.S. 415, 439-440 (1994) ...............................................20

*Braswell v. Conagra, Inc.*, 936, F2d 1169 (11th Cir. 1991)................................................20

*Sherrin v. Nw. Nat. Life Ins. Co.,* 2 F.3d 373 (11th Cir. 1993). ..........................................20

*Exxon Mobil Corp. v. Alabama Dept. of Conservation and Natural Resources,* 986 So. 2d 1093 (Ala. 2007)........................................................................................................21

*Singer v. Xipto*., 852 F. Supp. 2d 416 (S.D.N.Y. 2012) ....................................................21

*In re Bennitt,* 348 B.R. 820 (Bankr. N.D. Ala. 2006).........................................................21

*Axa Mediterranean Holding S.P. v. ING Ins. Intern., B.V.* 965 N.Y.S.2d 89 (1st Dep't 2013).....21

*Sapirstein-Stone-Weiss Foundation v. Merkin,* 950 F. Supp. 2d 621 (S.D.N.Y. 2013) ...............22

See *JP Morgan Chase v.* J.H. Elec. of N.Y. 893 NYS2d 237 (2nd Dept. 2010).  ........................22

*Fromowitz v W. Park Assocs., Inc*., 106 A.D.3d 950, 951, 965 N.Y.S.2d 597 (2d Dept. 2013)..

*Stangel v Zhi Dan Chen*, 74 AD3d 1050, 903 N.Y.S.2d 110 (2d Dept. 2010). ........................23

*Morris v. Laster*, 821 So. 2d 923 (Ala. 2001) ……………………………………………… ..23

*Kotick v Desai*, 123 AD2d 744, 507 NYS 217 (2d Dept. 1986).....................................................23

*S.S.I.G. Realty v Bologna Holding Corp.,* 213 AD2d 617, 624 NYS2d 225 (2d Dept. 1995). .....23

*BMW of North America, Inc., v. Gore*, 517 U.S. 559 (1996)………………………………….... 24

*TXO Prod. Corp. v. Alliance Res. Corp.*, 509 U.S. 443 (1993)………………………………….24.

## STATUTES AND REGULATIONS

Federal Arbitration Act ("FAA"), 9 U.S.C. § 10. .................................................................7, 8,16

Securities Exchange Act of 1934, 15 U.S.C. §78j(b), ..............................................................7,10

Exchange Act Rule 10b-5 .........................................................................................................7,10

17 C.F.R. §240.10b-5 ...............................................................................................................7,10

Alabama Code, Title 6, Chapter 11, Art. 2 ...................................................................................7

Section 20(a) of the Securities Exchange Act of 1934 15 U.S.C. § 78t(a).....................................7

Rules of Evid., Rule 404(b) ...........................................................................................................7

Ala.Code 1975, §§ 6–5–100 to 6–5–102 ......................................................................................10

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------X
Dr. EUBULUS J. KERR III,                          :
                                                  :        **Index No.        14-cv-9168(KBF)**
                              Plaintiff,           :
                                                  :
                    -against-                      :
                                                  :
**JOHN THOMAS FINANCIAL; ANASATASIOS**            :
**BELESIS, and JOSEPH CASTELLANO**,               :
                                                  :
                              Defendants.          :
----------------------------------------------------------------X


## DEFENDANTS' MEMEORANDUM
## OF LAW TO VACATE ARBITRATION AWARD


Defendants Anasatasios Belesis ("Belesis")[1], and Joseph Castellano ("Castellano")

(collectively the "Defendants"), by and through their attorneys, Joseph Mure, Jr., & Associates,

submit the following Memorandum of Law to assist the Court in resolving the legal and factual

issues presented by their Motion to vacate the Financial Industry Regulatory Authority ("FINRA")

Arbitration Award.

### JURISDICTION and VENUE

1.       This is an action to vacate an award from the FINRA dispute Resolution forum

pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10.

2.       This Court has jurisdiction pursuant to the provisions of said statutes.

3.       Venue is proper in the United States District Court, Southern District of New York

---

[1] Contrary to Plaintiff's assertion, Anasatasios Belesis did not conduct business with Mr. Kerr. John
Thomas Financial was a registered Broker/Dealer that employed over 250 employees, including Brian
Roth and Peter Viglione.   Although Plaintiff named defendants Anasatasios Belesis and Joseph
Castellano, in the caption of this action, on information and belief, only John Thomas Financial conducted
business, with the Plaintiff, and not Ansataios Belesis and Joseph Castellano in their individual capacity.

6

because the causes of action that give rise to this Motion arose in New York County, and the causes of action that gave rise to the arbitration in question arose in New York County.

## PRELIMINARY STATEMENT

4.	Plaintiff's Complaint must be dismissed under Title 9 United States Code Annotated §10 because the arbitrators exceeded their powers, and so imperfectly executed their powers that a mutual, final and definite award upon the subject matter submitted was not made, and there was no violation of the Securities Exchange Act of 1934, 15 U.S.C. §78j(b), and Exchange Act Rule 10b-5, 17 C.F.R. §240.10b-5, or of any other federal law. The documentary evidence, Plaintiff's statement of claim **(Exhibit A –Statement of Claim)** and amended statement of claim **(Exhibit B –Amended Statement of Claim),** coupled with a course of performance, which conformed to the terms of the agreement between the Plaintiff and John Thomas Financial ("JTF"), clearly establish that Plaintiff never spoke to Belesis or Castellano. Eubulus Kerr ("Kerr" or "Plaintiff" or "Claimant") conceded that only his brokers Brian Roth ("Roth") and Peter Viglione ("Viglione") had *defacto control* over managing Kerr's account. At best, Plaintiff has a claim for breach of contract or fiduciary duty only against JTF.

5.	The Arbitration Panel's (the "Panel") award for punitive damages against Belesis void under the Alabama Code, Title 6, Chapter 11, Art. 2, and New York law. Without any communication between Kerr and Belesis during Kerr's account at John Thomas Financial, Belesis could not have consciously or deliberately engaged in oppression, fraud, wantonness, or malice with regard to the Plaintiff's account.

6.	Furthermore, this memorandum of law is submitted in support of the Moving Defendants motion to vacate the arbitration award pursuant to Title 9 United States Code Annotated §10 because plaintiff's cause of action, if any, lies in a theory of breach of contract,

not fraud, (ii) plaintiff fails to establish any fraudulent acts of the defendants at the arbitration, and (iii) the marshaling of documentary evidence clearly establishes that there was no fraud.

<u>FACTUAL BACKGROUND</u>

7.      Dr. Eubulus Kerr is a resident of Louisiana, opened a new account at John Thomas Financial, where he indicated in his new account paperwork **(Exhibit C-New Account Form)** the following:

      a.   Investment objective was speculation;

      b.   Risk tolerance was aggressive;

      c.   Annual income between $1,000.000 and $2,500.000;

      d.   Liquid net worth of $2,500,000 or more;

      e.   A total net worth (excluding his house) of $2,500,000 or more; and

      f.   Extensive knowledge and experience investing in securities; i.e., more than 15 years' experience investing in stocks, bonds, option and mutual funds trading.

8.      Kerr's account executives were Viglione and Roth.

9.      Notwithstanding the fact that the brokers Roth and Viglione attended the Arbitration in New Orleans, the Claimant's attorney did not elicit direct testimony or cross-examine the witness at all during the hearing.

10.      Furthermore, the Panel declined to question, inquire or take testimony from both account executives, Roth and Viglione about the relationship with Kerr or any material facts relevant to establish any wrong doing on the Defendants.

11.      The Panel permitted and required Roth and Viglione to leave the arbitration prior to hearing any testimony.

12.      Kerr entered into a two-hundred and fifty thousand ($250,000.00) settlement with

Roth and Viglione for the alleged economic harm caused in Kerr's account by Roth and Viglione. After the settlement, Kerr dismissed all claims (with prejudice) alleging that Roth and Viglione violated the Securities Exchange Act of 1934, 15 U.S.C. §78j(b), and Exchange Act Rule 10b-5, 17 C.F.R. §t and Rule 10b-5, or of any other federal law. *See* **Exhibit D, Settlement award.**

13.     Any other losses suffered in Kerr's account was due to market trading

14.     The firm's branch office manager overseeing Kerr's account was Mark Greenberg ("Greenberg"), who was assisted by three assistant branch office managers.

15.     The branch manager and assistant branch managers were properly licensed to supervise Roth and Viglione's handling of Kerr's account.

16.     Greenberg had the responsibility for reviewing Kerr's account, and taking any action if there were any "red flags" that might have come up regarding the activity in the Kerr's account.

17.     During the period of the time covering the trading at issue in the Arbitration, however, Belesis and Castellano were neither directly nor indirectly responsible for supervising the two representatives Roth and Viglione, nor Kerr's account.

18.     Neither Belesis or Castellano qualified Kerr as an investor, never managed his account, never made any investment recommendations to him, never provided him any investment advice and never received any commissions or other compensation related to Claimant's account. Furthermore, neither Belesis or Castellano spoke with Claimant, ever.

19.     John Thomas Financial was responsible for the supervisory system in place according to reasonable industry sales practice requirements.

20.     Over the twelve months, or so that Kerr traded with John Thomas Financial he:

a.     acknowledged receiving all of his confirms and statements in a timely manner;

b.     spoke with Roth and Viglione thousands of times, *see* **Exhibit E – Phone Log**;

c.  spoke with the sales and branch managers several times, *see* **Exhibit F- Activity Letters**;

d.   received commissions on a fully disclosed basis in written, and

e.  the acquiesced that Greenberg, his assistants, and JTF were the FINRA required supervisors.

**DISCUSSION**

**A.    THE ARBITRATION AWARD MUST BE VACATED ON THE GROUND OF MISCONDUCT BY THE ARBITRATORS**

**2.   Direct and control person liability.**

An award will be vacated if it is deemed to be in manifest disregard of the law. *LLT Int'l Inc. v. MCI Telecommunications Corp.*, 18 F. Supp. 2d 349, 352 (S.D.N.Y. 1998). While review in this regard is "highly deferential" to the arbitrators, an arbitration award will be vacated when a party clearly demonstrates "that the panel intentionally defied the law." *STMicroelectronics, N.V. v. Credit Suisse Sec. (USA) LLC*, 648 F.3d 68, 78 (2d Cir. 2011.)

The Plaintiff's Statement of Claim failed to allege any factual occurrence that Defendants were responsible for the "churning" of the account. Indeed, Plaintiff's only factual allegation against Defendants was that the superiors and control person of JTF failed to "contact Dr. Kerr to discuss the trading or churning in his account", Kerr v. John Thomas Financial; et. el. Statement of Claim. ¶37. **Exhibit A- Statement of Claim** and **Exhibit B- Amended Statement of Claim.** Thus, the Panel finding that Belesis and Castellano churned Plaintiff's account clearly disregarded the requirements for a claim under 10b-5.

Claims of churning, which depend on a broker's liability for excessive trading, have been recognized under Rule 10b–5. *Caiola v. Citibank, N.A., New York,* 295 F.3d 312, 324 (2d Cir. 2002); See *Saxe v. E.F. Hutton & Co., Inc.,* 789 F.2d 105, 112 (2d Cir.1986) ("Churning occurs

when an account has been excessively traded to generate commissions in contravention to the investor's expressed investment goals)  A claim alleging a violation of 10b-5 requires proof of scienter, defined as "a mental state embracing intent to deceive, manipulate, or defraud." *S.E.C. v. Obus,* 693 F.3d 276, 286 (2d Cir. 2012); *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 193 & n. 12, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). Negligence is not a sufficiently culpable state of mind to support a section 10(b) civil violation. *Obus,* 693 F.3d at 286. Here, the  arbitrators clearly disregard the scienter requirement and the law when ruling Belesis and Castellano are liable for churning.

Defendants' motion should be granted even if the arbitrator's holding rested on derivative liability because they manifestly disregarded the law. Control person liability arises from Section 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78t(a), which provides in relevant part:

> Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, *unless the controlling person acted in good faith and did not directly induce the act or acts constituting the violation or causes of action.* (Emphasis added.) To establish a prima facie case of control person liability, a plaintiff must show (1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud. *ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007).  The Second Circuit established a two-part inquiry to determine derivative liability as a control person. Frist, the court must determine whether the nature of the relationship between the alleged controller and the controlee is such that the controller possesses the actual authority to influence and direct the actives of the primary wrongdoer. Second, even if the controller has such authority, a respondent is not liable unless he is also a culpable participant in the fraud. *Lanza v. Drexel & Co.*, 479 F.2d 1277, 1299 (2d Cir. 1973); Gordon v. Burr, 506 F.2d 1080,1085-1086 (2d Cir. 1974).

Here, the panel disregarded the rule establishing a *prima facie* case for punitive damages. First, the panel failed to recognize or address any wrongdoing on the part of the brokers, the

primary wrongdoers in the case, both Roth and Viglione attended the arbitration but were never asked any questions by the Panel. Furthermore, the panel permitted and required them to leave the hearing without obtaining critical testimony from either Roth or Viglione. Therefore, the Panel never found either Roth or Viglione liable or guilty of any wrongdoing.

Second, a finding of control person liability requires "an individuated determination of a [person's] control of the primary violator as well as a [person's] particular culpability." *Bouguslavsky v. Kaplan*, 159 F.3d 715, 720 (2d Cir. 1998). Assuming *arguendo*, the arbitrators found Defendant's to be control persons, they did so arbitrarily. For example, the panel found no wrong doing against Michele Misiti, the branch office manager of JTF, and Thomas Pinou, the Chief Financial Officer of JTF. Misiti, as the direct supervisor of trading activity in Plaintiff's account, possessed and was tasked to have the actual authority to influence and direct the actives of the primary wrongdoers, the brokers handling Plainitff's account, yet was not found as a control person. The arbitrators also found the Pinou, an officers of JTF just like the Defendants were officers, absent of wrong doing and thus, not considering him a control person for liability purpose.

Third, panel disregards the "culpable participation" as an element of claim. In *Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmastsu CPA, Ltd.*, the Court interpreted the law to require Section 20(a) plaintiffs to plead culpable participation, meaning by alleging facts indicating that the controlling person knew or should have known that the primary violator, over whom that person had control, was engaging in fraudulent conduct. *No. 13 CIV. 1094 ER*, 2014 WL 3605540 (S.D.N.Y. July 21, 2014). Here, the arbitrators relied on no evidence that would support the Defendants as being culpable participants.

### 2. Respondeat Superior

Under New York law, the doctrine of *respondeat superior* is simple- the employer is

liable for the wrongful conduct of its employees, done in the course of the employee's official duties, for the benefit of the employer and consistent with the standards, rules and procedures of the employer. *See Adams v. New York City Transit Authority*, 211 A.D.2d 285, 626 N.Y.S.2d 455 (1st Dept. 1995), *aff'd*, 88 N.Y.2d 116, 643 N.Y.S.2d 511 (1996). *See also Rausman v. Baugh*, 248 A.D.2d 8, 10-11, 682 N.Y.S.2d 42, 43-44 (2d Dept. 1998) ("[u]nder the doctrine of respondeat superior, an employer is answerable for the torts of an employee who acts within the scope of his or her employment [citation omitted]. The purpose of the rule is to render the employer responsible, in proper cases, for the employee's tortuous acts, which although errant, were done in furtherance of the employer's business [citation omitted].

The theory is that the employer should, as a required cost of doing business, in an appropriate case, compensate a party harmed by an employee who was acting not on his or her own behalf, but in the employer's service [citation omitted]"). Therefore, any negligence or wrongdoing by Roth or Viglione, falls on the shoulders of John Thomas Financial, and not Defendants Belesis or Castellano.

While "the doctrine holds *employers* vicariously liable for the acts of employees[,] *it does not apply to executive personnel who fall into the category of employees." Patton v. Dumpson,* 498 F. Supp. 933, 943 (S.D.N.Y. 1980) (emphasis added). Belesis –the CEO of JTF during the time Claimant's account was allegedly being mishandled by Roth and Viglione, were not employees of JTF, but independent contractors. Claimants do not allege in the Statement of Claim that Belesis directly employed or paid Roth or Viglione, nor did they offer any evidence at the hearing showing that Belesis, as opposed to JTF, was Roth and Viglione's employer because Roth and Viglione were independent contractors. This is "independent contract" arrangement is a critical fact, which the arbitrators simply ignored, they should have

insisted on proof on the issue that Belesis personally employed Roth and Viglione. Belesis is thus not subject to liability under the doctrine of *respondeat superior*. The law is clear on *respondeat superior*, and the arbitrators disregard it.

3. **There is no private right of Action for Failure to Supervise.**

Over twenty years ago, in 1994, the United States Supreme Court struck down a half-century of case law that had recognized an implied private right of action against registrants and associated persons for aiding and abetting violations of the federal securities laws because Congress had not explicitly granted such a private right of action. *See Central Bank of Denver, N A. v. First Interstate Bank of Denver, N A.,* 511 U.S. 164, 184 (1994) ("[w]hen Congress wished to provide a private damages remedy, it knew how to do so and did so expressly"). *Central Bank* was the result of more than fifteen years of caveats by the Supreme Court that it would not support lower courts' efforts to create private implied causes of action where no intent to create a private right of action was manifested by Congress. *See Touche Ross & Co. v. Redington,* 442 U.S. 560 (1979). Like *Central and Touche Ross*, because Congress has not explicitly provided a private right of action to sue for failure to supervise, Belesis and Castellano are not liable, and Claimant's claims, to the extent that they are founded on the federal securities laws, should have been dismissed.

**B.  CONTROL PERSON LIABILITY DOES NOT EXIST BECAUSE ANASTASIOS AND CASTELLANO CONDUCT RAISE TO THE LEVEL NECESSARY TO CREATE PERSONAL LIABILITY**

At all times alleged, Defendants Belesis and Castellano was acting on behalf of the corporation, JTF. Plaintiff has not come close to meeting the burden that would allow him to pierce the corporate veil and hold Belesis and Castellano responsible for the corporation actions. Therefore, even if the court would to hold that is JTF liable based on the Plaintiff's Statement of

Claim, which was properly pled, dismissal is warranted against Belesis and Castellano in their individual capacities. Claimants pleaded no facts in the Statement of Claim, or Amended Statement of Claim, and offered no evidence at the hearing, that would establish that Belesis or Castellano had "actual control" over the transactions in question. *Global Crossing,* 2005 WL 1875445, at *3.

In all professional dealings with the Plaintiff the Defendants were acting as a corporate officers of JTF, rather than in their own individual capacity. New York allows individuals to incorporate for the very purpose of avoiding personal liability. *Gartner v. Dnyder*, 607 F.2d 582, 586 (2d Cir. 1979); *Bridgestone/Firestone v. Recovery Credit Servs.*, 98 F.3d 13, 17 (2d Cir. 1996). Moreover, under New York law, courts will only reluctantly, and only in extraordinary situations, pierce the corporate veil and impose personal liability on the corporation's officers and agents. *Portchester Electric v. Atlas*, 40 NY2d 652, 656 (1976); *Carte Blanche Pte., Ltd. v. Diners Club Int'l, Inc.*, 2 F3d 24, 26 (2d Cir. 1993). A plaintiff seeking to circumvent the corporate insulation of its affiliates must meet a formidable burden of proof demonstrating that the corporation merely functions as the alter ego of the defendant. *Strojmaterialintorg v. Russian AM. Commercial Corp.*, 815 F. Supp. 103, 105 (E.D.N.Y 1993).

Therefore, Plaintiff did not meet his burden during the Arbitration by standing on the shoulders of the Arbitration award from a deficient hearing, where the Claimant did not submit evidence showing that Belesis and Castellano violated corporate formalities.

## C.   THE ARBITRATION AWARD SHOULD BE VACATED BECAUSE THERE IS A MANIFEST DISREGARD OF THE LAW

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 10(a), instructs that an arbitral decision may be vacated when an arbitrator has exhibited a "manifest disregard of law." *Rodriguez de Quijas v. Shearson/Am. Express, Inc.,* 490 U.S. 477 (1989). Based on the facts outlined above and

on the following legal argument, Defendants submit that Plaintiff's Arbitration Award must be dismissed because there is a clear disregard of the law. Moreover, to vacate the award, the Court must find "something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand or apply the law." *Folkways Music Publishers, Inc. v. Weiss,* 989 F.2d 108, 111 (2d Cir.1993). It is clear based on the above, that the arbitrators had a manifest disregard for the law, and failed to properly understanding the law.

1. **THE ARBITRATORS FAILED TO ESTABLISH THAT BELESIS'S CONDUCT WAS REPRESENSIBLE IN ORDER TO AWARD PUNITIVE DAMAGES UNDER THE U.S. SUPREME COURT'S TEST IN *STATE FARM MUT. AUTO. INS. CO. v. CAMPBELL***

Under the first guidepost "a court must consider whether: the harm was physical rather than economic." *State Farm Auto Ins. Co. v. Campbell*, 538 U.S. 408 (2003). It is clear in this case that the injury alleged in Kerr's account was only economic, and not physical. Furthermore, Kerr did not indicate any infliction of emotional distress, and as a physician making millions a year, it is reasonable that there was no emotional distress. The Arbitration panel disregard the "most important indicium of a punitive damages award's reasonableness" because there was no "tortious conduct evinced" establishing that Belesis had "an indifference to or a reckless disregard of the health and safety" of Kerr; even more so that the handling of Kerr's account by Roth and Voglione was "an isolated incident", and the alleged harm did not "result from intentional malice, trickery, or deceit[,]" but was due to stock market conditions of the investments. *Id.*

The Panel's award is void of any reference to establish that Beleisis conduct was reprehensible under the United States Supreme Court's test for punitive damages. In consideration of the facts and circumstances surrounding the Kerr, Roth, Viglione, and JTF's agreements, particularly their mutual assent to the terms under preexisting contracts, and settlements, Plaintiff's cause against Belesis is not created under federal law, nor does Plaintiff's right to relief under New

York or Alabama law.   The Court held "punitive damages should only be awarded if the defendant's culpability … is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence.  *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 123 (2003).

Furthermore, the U.S. Supreme Court held that the "The Due Process Clause of the Fourteenth Amendment prohibits the imposition of … arbitrary punishments on a tortfeasor; the reason is that elementary notions of fairness enshrined in constitutional jurisprudence dictate that a person receive fair notice not only of the conduct that will subject him to punishment, but also of the severity of the penalty that a state may impose." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003).  In consideration of the facts and circumstances surrounding the agreement between Kerr and JTF, Defendant Belesis did not have prior notice that the Panel would award punitive damages against him under the Alabama Code, Title 6, Chapter 11, Art, and therefore Defendant's Due Process Rights were clearly violated.

The standard for an award of punitive damages in New York is a demanding one, similar to the law in Alabama, punitive damages are awarded in tort actions where the Defendant's wrongdoing has been established by clear and convincing evidence Defendant's "intentional and deliberate, and has the character of outrage frequently associated with crime." *Prozeralik v. Capital Cities Communs.,* 626 N.E.2d 34, 41-42 (N.Y. 1993); *Deshmukh v. Cook,* 630 F. Supp. 956, 961 (S.D.N.Y. 1986) ("the imposition of punitive damages is an extraordinary event.... [I]t requires convincing proof of sufficient facts to satisfy the Court that it is using its punitive powers in a situation that merits them.").  Plaintiff's statement of claim **(Exhibit A)** and amended statement of claim **(Exhibit B)**,

The Panel's punitive award is unlike compensatory damages, which are intended to redress

a defined loss between a plaintiff and a defendant, punitive damages are intend to punish especially reprehensible conduct and deter its future occurrence. *See Zurich Ins. Co. v. Shearson Lehman Hutton, Inc.,* 642 N.E.2d 1065, 1068 (N.Y. 1994) ("the purpose of punitive damages is *solely* to punish the offender and to deter similar conduct on the part of others. Punitive damages are not intended to compensate or reimburse the plaintiff.") (emphasis added).

### D. APPLYING NEW YORK LAW OR ALABAMA LAW, THE APPROPRIATE STANDARD FOR PUNITIVE DAMAGES IS "CLEAR AND CONVINCING EVIDENCE."

Given the underlying purpose for punitive damages, New York state courts have long recognized that the appropriate standard of proof for punitive damages is "clear and convincing evidence." *See Cleghorn v. New York C. & H. R. R. Co.,* 56 N.Y. 44, 48 (N.Y. 1874).[2] And the majority of New York state courts continue to apply a "clear and convincing evidence" standard to punitive damages. *See Munoz v. Puretz,* 753 N.Y.S.2d 463, 466 (N.Y. App. Div. 2003) ("In order to recover punitive damages, a plaintiff must show, by 'clear, unequivocal and convincing evidence' ... 'egregious and willful conduct' that is 'morally culpable, or is actuated by evil and reprehensible motives.' "); *Orange & Rockland Utils., Inc. v. Muggs Pub, Inc.,* 739 N.Y.S.2d 610, 611 (N.Y. App. Div. 2002) (noting that the correct standard of proof required for the imposition of punitive damages is "clear and convincing evidence"); *Sladick v. Hudson General Corp.,* 641 N.Y.S.2d 270, 271 (N.Y. App. Div. 1996) (holding that "plaintiff failed to demonstrate by clear, unequivocal and convincing evidence that defendants' conduct was so wanton or reckless as to justify an award of punitive damages"); *Camillo,* 587 N.Y.S.2d at 309 ("An award for punitive damages must be supported by 'clear, unequivocal and convincing evidence.' "); *Lamborn v. New York Cotton Exch.,* 203 A.D. 565, 570 (N.Y. App. Div. 1922) (to recover punitive damages, recklessness of a criminal nature must be "clearly established"); *Ryan v. Brophy, Gestal, Knight &*

*Co., L.P.,* No. 12222/91, 1996 N.Y. Misc. LEXIS 583, at *5-6 (N.Y. Misc. Sept. 30, 1996) (holding that clear and convincing evidence is the proper standard to instruct a jury on a punitive damage claim, not the preponderance of evidence).

The majority of New York state courts have unambiguously articulated that "clear and convincing evidence" is the appropriate standard for punitive damages under New York law. Furthermore, the United States Supreme Court has lauded the use of a "clear and convincing evidence" standard for punitive damages. *See Pacific Mut. Life Ins. Co.,* 499 U.S. at 23 n. 11 ("There is much to be said in favor of a State's requiring, as many do, a standard of 'clear and convincing evidence' [for punitive damages] ...."); *Honda Motor Co. v. Oberg,* 512 U.S. 415, 439-440 (1994) (Ginsburg, J., joined by Rehnquist, C.J., dissenting) (" 'clear and convincing evidence' standard constrains the jury's discretion, limiting punitive damages to the more egregious cases."). In order to give "proper regard" to the decisions of New York state courts and the guidance of the United States Supreme Court, the court should instruct the jury that Sears Petroleum and SEACO must prove that they are entitled to punitive damages by "clear and convincing evidence."

### E.    THE PUNITIVE DAMAGES SANTCION BY THE ARBITRATORS MUST BE DISMISSED ACCORDING TO ALABAMA CODE 1975 § 6-11-20, WHICH REQUIRED DELIBERATE ENGAGEMETN OF OPPRESSION, WANTONNESS, OR MALICE

In order for the pattern-or-practice evidence to be relevant and admissible in fraud action, the collateral acts of fraud must be substantially of the same character and contemporaneous in point of time, or nearly so. Rules of Evid., Rule 404(b). *Morris v. Laster*, 821 So. 2d 923 (Ala. 2001).

Under Alabama law, punitive damages are ordinarily not recoverable for breach of contract. *Sherrin v. Nw. Nat. Life Ins. Co.,* 2 F.3d 373 (11th Cir. 1993). Elements of fraud based on

suppression of material facts under Alabama law are duty on part of defendant to disclose facts, concealment or nondisclosure of material facts by defendant, defendant's knowledge of facts and their materiality, action by plaintiff in reliance on suppression, and damages resulting from reliance. Ala.Code 1975, §§ 6–5–100 to 6–5–102. *Sherrin* at 2 F.3d 373 (1993). Furthermore, since the Panel did not establish fraud by clear and convincing evidence, "punitive damages" are not permissible because there was no finding of fraud against Belesis establishing he either intended to deceive or had a "reckless disregard of falisity." *Braswell v. Conagra, Inc.*, 936, F2d 1169 (11th Cir. 1991).

It is clear that the law in Alabama, that a claim for breach of contract, "will not support award for punitive damages" because the injury is only economic. Ala. Code 1975, § 6-11-20. *In re Bennitt,* 348 B.R. 820 (Bankr. N.D. Ala. 2006). Furthermore, even if there was a fiduciary duty, the Courts in Alabama have held that "[p]unitive damages are prohibited for breach of contract, even where the breach seems particular egregious. *Exxon Mobil Corp. v. Alabama Dept. of Conservation and Natural Resources,* 986 So. 2d 1093 (Ala. 2007).

## F.    THE PUNITIVE DAMAGES SANTCION BY THE ARBITRATORS MUST BE DISMISSED ACCORDING TO NEW YORK LAW

The law is clear in New York that "[p]unitive damages were not recoverable under [a] stock purchase agreement." *Axa Mediterranean Holding S.P. v. ING Ins. Intern., B.V.* 965 N.Y.S.2d 89 (1st Dep't 2013). Since the Claimant's action in this case was a breach of contract and alleged that Roth and Voglione's "failure to perform [their] contractual obligations, and [the] mere allegation that alleged breach of contract was maliciously intended or constituted willful misconduct did not render a breach of contract claim a separate and independent tort claim," therefore, punitive damages are not recoverable in this case. *Axa Mediterranean Holding S.P.,* 965 N.Y.S.2d at 89 (2013).

Furthermore, under New York law, "punitive damages are unavailable in breach of contract actions involving only private rights. *Sapirstein-Stone-Weiss Foundation v. Merkin*, 950 F. Supp. 2d 621 (S.D.N.Y. 2013) (applying New York law). It is clear from the Claimant's Statement of Claim and Amended Statement of Claim, that Kerr is an investor, and "purported investors in a company failed to state a claim for punitive damages in a breach of contract suit, absent any allegation of conduct aimed at the general public," is not recoverable. *Singer v. Xipto*., 852 F. Supp. 2d 416 (S.D.N.Y. 2012) (applying New York law).

Therefore, Kerr cannot recover on his breach of contract claim by couching it under some other tort claim.

**G.      THIS CASE SHOULD BE DIMISSED AGAINST  BELESIS AND CASTELLANO IN THEIR INDIVIDUAL CAPACITY BECAUSE THE CLAIMS ARE REALLY A BREACH OF CONTRACT AGAINST JTF**

At its very essence, this lawsuit is merely the recovery of an investment in a highly aggressive and speculative account that did not pan out. However, because JTF is a dissolved entity and  Plaintiff has little chance to collect from JTF, Plaintiff concocts an elaborate scheme to enable it to try to  recover money from the Defendants' in their individual capacity.

The simple reality of the transactions with the Plaintiff, his brokers Roth and Viglione, and JTF, is a cause of action for breach of contract.  Plaintiff controlled his brokerage account at all times, and lost money in the stock market.  Plaintiff does not allege in his statement of claim that he invested with Belesis or Castellano in their individual capacities.  Plaintiff has sufficiently stated a cause of action to recover damages for breach of contract against  JTF by alleging all of the essential elements: to wit, the existence of a contract, the plaintiff's performance pursuant to that contract, the defendant's breach of their obligations pursuant to the contract,  and damages resulting from that breach.  See *JP Morgan Chase v.* J.H. Elec. of N.Y. 893 NYS2d 237 (2nd

Dept. 2010).

Where a claim to recover damages for fraud is premised upon an alleged breach of contractual duties, and the allegations with respect to the purported fraud do not involve representations which are collateral or extraneous to the terms of the parties' agreement, a cause of action sounding in fraud does not lie. *Fromowitz v W. Park Assocs., Inc., 106 A.D.3d 950, 951, 965 N.Y.S.2d 597* (2d Dept. 2013); *Stangel v Zhi Dan Chen,* 74 AD3d 1050, 903 N.Y.S.2d 110 (2d Dept. 2010).

The law is clear that when a plaintiff alleges a breach of contract complaint, the addition of allegation of scienter will not transform that breach of contract action into one to recover damages for fraud. *Kotick v Desai*, 123 AD2d 744, 507 NYS 217 (2d Dept. 1986).Further, no fraud action arises when sole fraud alleged relates to breach of contract. *S.S.I.G. Realty v Bologna Holding Corp.,* 213 AD2d 617, 624 NYS2d 225 (2d Dept. 1995).

In the case at hand, Plaintiff presumably elects not to allege a cause of action in contract because of concern that the prospects of recovery may be slim. However the mere fact that Plaintiff has elected not to allege a cause of action does not mean that the allegations alleged by Plaintiff do not constitute breach of contract. Accordingly, all of Plaintiff's causes of action should be dismissed because they are really a cause of action for breach of contract, which is not alleged.

## H.    ARBITRATORS DISPLAY BIAS AGAINST BELESIS AND CASTELLANO

The Arbitrators' manifest disregard of the law and the facts that damages are not recoverable for an ordinary breach of contract is further evidence of the bias against Belesis and Castellano.

### 1.  THE AMENDED COMPLAINT ADDS NOTHING MORE THAN IRRELEVANT AND PREJUDICIAL HEARSAY FROM AN OUT OF STATE

**SOURCE**

Absent this evidence, the Award was issued in manifest disregard of the law and the facts because the "principles of state sovereignty and comity that" the FINRA Arbitrators "may not impose economic sanctions on violators of its laws with intent of changing the tortfeasor's alawful conduct in other States." *BMW of North America, Inc., v. Gore*, 517 U.S. 559 (1996).

Above Belesis and Castellano's objection to amend the statement of claim, the arbitrators denied Belesis and Castellano motion, and admitted out of state hearsay statements that were irrelevant and unrelated to the allegations in the Kerr's statement of claim.

All of the aforementioned resulted in the Panel's bias being display by denying the motion to amend the statement of claim to include hearsay clearly indicates bias against Belesis and Constellano constituted an arbitrary deprivation of Belesis and Castellano's property rights without due process of the law. *TXO Prod. Corp. v. Alliance Res. Corp.*, 509 U.S. 443 (1993).

## 2.  THE HEARING

The June 2014, hearing went on as scheduled despite the Panel's declining to take the testimony of Roth and Viglione.  Furthermore, the Panel refused to question, inquire from Roth and Viglione about the relationship with Kerr or any material facts relevant to establish any wrong doing, churning or fraud.  The Panel, set up the hearing to allow the Claimant's appearance with no opposition from Roth and Viglione.

Therefore, making a presumption of guilt prior to the actual hearing is clear because the testimony of Roth and Viglione was material and necessary.

Roth and Viglione's testimony is necessary, material and essential to establish scienter or any of the elements stated in Kerr's statement of claim or amended statement of claim.

All of the aforementioned resulted in FINRA's negligence and malfeasance, collectively

tainted the Arbitration and the hearing.  No award against Belesis or Costellan that resulted was

fundamentally fair process.  Thus, under 9 U.S.C. § 10(a), FINRA engaged in misconduct that

warrants vacating the Award.

## **CONCLUSION**

Wherefore, based on the foregoing, the Arbitration Award should be dismissed in its entirety against

Anastasios Belesis, and Joseph Castellano.

Dated: New York, New York
       March 10, 2015

Respectfully submitted,
By: /s./ *Anthony Varbero*
Anthony C. Varbero Esq. (AV88)
Joseph Mure, Jr., & Associates
26 Court Street, Suite 2601
Brooklyn, New York 11242
*Attorneys for Defendants*
